UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**WYNDHAM PROPERTIES II, LTD.**,

  Plaintiff,

v.                                           No. 4:23-cv-00782-P

**BUCA TEXAS RESTAURANTS, L.P.**,

  Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff's Partial Motion for Summary Judgement. ECF No. 15. For the reasons stated below, the Court hereby **DENIES** the Motion.

## BACKGROUND

Wyndham Properties and Buca Texas Restaurants, L.P., are no strangers to each other and are certainly not strangers to the legal system. The present lawsuit between this landlord and tenant couple marks the third in the last five years.

Buca Texas Restaurants and Wyndham Properties entered into a lease agreement in 2002 by which Buca would operate the family-style chain restaurant Buca Di Beppo. However, nothing about the relationship between the two has seemed like a family affair. Since 2016, the two parties have terminated and entered into three different amended lease agreements for one reason or the other. The third amended lease ("Lease") is the source of the present issue.

Wyndham claims that Buca had failed to pay its 2022 tax obligations by the January 31, 2023 deadline set out in the Lease. On March 14, 2023, Wyndham notified Buca that it was in violation of the Lease and demanded that Buca pay the property taxes within ten days of the notice. On March 29, 2023, alleging that Buca did not pay the taxes, Wyndham sent a letter to Buca terminating the Lease and demanding possession of the premises within ninety days. When the ninety days

passed, on June 28, 2023, with Buca still operating Buca Di Beppo as normal, Wyndham sent a Notice to Vacate informing Buca that if they did not give up the location, eviction would be in order.

On July 5, 2023, Wyndham filed its Complaint for Forcible Detainer in the Justice Court, Precinct 3 of Tarant County seeking to evict Buca. On July 27th, Buca timely removed the lawsuit to this Court. After amending the complaint in August 2023, and months of litigation and an unsuccessful mediation, Wyndham filed a motion for partial summary judgement on February 2, 2024. That motion is now ripe for the Court's review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

ANALYSIS

**A. Wyndham's Notice to Buca**

Wyndham claims that they sent a notice to Buca on March 14, 2023, which stated that Buca had failed to and thus needed to pay its real property taxes within ten days of the notice. *See* ECF No. 16 at 4. Wyndham claims that Buca did not do so and followed up by informing Buca that the Lease was thus terminated and Buca needed to vacate the premises within ninety days. *Id.* Wyndham claims that they were able to immediately terminate the lease under terms of the Lease. *Id* at 5–6. In particular, Wyndham points to Section 18(a)(i), which states the following:

> In the event Tenant fails to pay the rent or real property taxes at the times and manner herein above provided, and such failure shall continue for a period of ten (10) days after proper written notice under Section 25 of such failure from Landlord; provided, however that Landlord shall not be required to provide more than two (2) written notices in any calendar year. After two notices are provided by Landlord in any calendar year, Landlord shall have no further obligation to provide Tenant notice of such failure and may exercise such rights and remedies provided by Section 18(b) of the Lease."

*Id.* at 7. Wyndham's basis for claiming they are entitled to summary judgment hinges on the reading of this clause. Wyndham claims that "shall not be required to provide more than two (2) written notices" means that the number simply must not exceed two. *Id.* at 8. Wyndham explains this is exactly what happened when they provided written notice on March 14, 2023, and then subsequently terminated the lease without further written notice on March 29, 2023. *Id.* Under their understanding of the Lease, the March 14, 2023 written notice was sufficient as they "shall not be required to provide more than two (2) written notices in any calendar year."

In contrast, Buca argues that this is an improper reading of the Lease, that Wyndham never gave Buca proper notice regarding a purported default, and that the alleged default was cured within a proper time. *See* ECF No. 19 at 2–3. Under Buca's reading of the lease, two written notices are required in order to terminate the lease. *Id.* at

10. They cite the Lease itself which states "after two notices are provided by Landlord in a calendar year, Landlord shall have no further obligations. . ." *Id.* Accordingly, Buca claims Wyndham is not entitled to summary judgment as they had no right to terminate the Lease in the first place. Thus, the Court must determine the meaning of the clause at issue in the Lease. *Id.* at 11.

**B. The Lease Required Two Written Notices to Buca**

Texas law governs interpretation of the Lease. *See BB Energy, LP v. Devon Energy Prod. Co. LP.*, 3:07-cv-072, 2008 WL 2164583 at *5 (N.D. Tex. May 23, 2008) (O'Connor, J.) (A district court sitting in diversity will look at state law to provide the applicable rules of contract interpretation). Under Texas law, the interpretation of an unambiguous contract is a legal question for a court to decide. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). To determine whether a contract is unambiguous, a court applies established rules of construction to consider whether the language of a provision is uncertain and doubtful such that it is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). "A contract is not ambiguous merely because the parties to an agreement proffer conflicting interpretations of a term." *Gonzalez*, 394 F.3d at 392 (quoting *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002)). A contract is unambiguous if it is so worded that it can be given a certain or definite legal meaning or interpretation. *Id.* (citing *Nat'l Union Fire Ins. Co. of Pitts. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). Summary judgment is appropriate in a case involving the interpretation of an unambiguous contract. *Coker*, 650 S.W.2d at 393.

When no ambiguities are found, a court discerns the contracting parties' true intent by looking only within the four corners of the instrument and evaluating its express terms in light of the whole agreement. *BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 393–94 (Tex. 2017). The terms used in the contract are "given their plain, ordinary meaning unless the [contract] itself shows that the parties intended the terms to have a different, technical meaning." *Am.*

4

*Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). Even so, a court is still "bound to read all parts of the contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Doing so ensures that a court properly "examine[s] and consider[s] the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

Construing a contract in its entirety ensures "'that the effect and meaning of one part on any other may be determined.'" *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 408 (5th Cir. 2006) (quoting *Smart v. Tower Land & Investment Co.*, 597 S.W.2d 333, 337 (Tex. 1980)). Should the terms within the entire agreement appear to conflict, courts rely on "well established rule[s]" of construction to resolve the conflict. *See Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.—Dallas 2006, pet. denied) (stating that courts turn to well-established rules of construction to resolve conflicts among a contract's provisions). One such rule is that specific terms govern over general terms. *Id.* This rule is consistent with the principle that contract provisions should be interpreted in context of the document as a whole. *See Forbau*, 876 S.W.2d at 133–34.

Here, as explained above, the Parties disagree on what "Landlord shall not be required to provide more than two (2) written notices in any calendar year" means. Wyndham claims it can mean only one written notice while Buca claims it requires two. Looking at the full clause it is clear that the intention of the Parties is for there to be a two written notice requirement. Earlier in the sentence in question, the Lease states "In the event Tenant fails to pay the rent or real property taxes at the times and manner herein above provided, and such failure shall continue for a period of ten (10) days *after proper written notice* under Section 25 of such failure from Landlord" ECF No. 16 at 7. So, it is already established that one written notice is required under the Lease. In the sentence after, the Lease states "*after two notices are provided by Landlord in any calendar year*, Landlord shall have no further

5

obligation to provide Tenant notice of such failure and may exercise such rights and remedies provided by Section 18(b) of the Lease." *Id.* Combining these two sentences, it is clear that there is an intention by the Parties to require *two* written notices in order to move forward with any adversarial actions such as termination. If the Parties had not intended for two written notices to be the necessary amount, it would make little sense to say "more than two" when one is sufficient. Further, the subsequent sentence which states that "after two notices," demonstrates the Parties' emphasis on two written notices, otherwise the turn of phrase would not have appeared multiple times in the same clause.

Accordingly, the Court will not read this section of the Lease to mean that one written notice was sufficient for Wyndham to proceed with terminating the lease. Therefore, the Court must **DENY** Wyndham's Partial Motion for Summary Judgment as Wyndham did not provide proper notice to Buca as required under the Lease before moving to terminate the Lease, evict Buca, and take possession of the property.

## CONCLUSION

Since the Lease unambiguously requires two written notices before moving forward with terminating the lease and evicting Buca, Wyndham is not entitled to summary judgment on the issue of possession of the premises. For this reason and the reasons stated in the Memorandum Opinion, the Court **DENIES** Wyndham's Motion for Partial Summary Judgment (ECF No. 15).

**SO ORDERED** on this **2nd day of May 2024.**

_____
Mark T. Pittman
UNITED STATED DISTRICT JUDGE